Good morning. May it please the court. I'm Gordon Erspommer, representing the appellant nonprofit corporations that are dedicated to veterans issues here today. I'd like to reserve three minutes for rebuttal. What does it mean to be a veteran in America today? The essence of this appeal relates to the VA's multiple failures to fulfill the statutory commands established by Congress to provide timely medical care and disability compensation, which have resulted in suicide and other tragic consequences for many of our veterans. Here we are struck at the outset by a fundamental disconnect between the district court's findings of fact and its legal analysis. Let me ask you this, just as a general question. If we were to rule in your favor, how would we keep the federal courts from taking over every single agency in the federal government and running it? I mean, not every, I'm willing to say that not every, that most agencies in the federal government do things in a way that's not satisfactory to some people. They're too slow, they don't deal with enough issues. I mean, there are all sorts of complaints people have against them. I just have a very hard time cabining this claim that you have here. Well, if you're referring to the delay claims, Your Honor, which it appears you might be, but... Well, delay is one kind of claim, but you've got other kinds. Let's start. Delay is a good one, because we've got lots of agencies that are slower than some people prefer. Well, I would say what differentiates this case from many other cases are the fact that we're dealing here with disability claims, which involve the health and the welfare of our veterans. Second, we are dealing with very, very egregious delays. That's all that the Social Security Administration does, for example. No, it's very different than the Social Security Administration. The Social Security Administration, you may recall the cases, there's a series of days' delay. I'm sorry. I didn't mean to suggest that they were equally slow or anything of that sort, but the Social Security Administration does deal with disability claims. They do, and the whole system for adjudicating Social Security claims is quite different than the VA system. First of all, you have a right to retain counsel, whereas in the VA system you do not. Secondly, there's a very prescribed time frame and flow for the cases of the Social Security system. You have an independent review officer deciding the claims in the initial instance, whereas at the VA you have the VA itself deciding the claims in the initial instance. But there are not very many cases involving veterans in the Article III system since the passage of the Veterans Judicial Review Act. There is a case holding relating to procedures in cases involving constitutional claims. But let me just make a very important point about the findings of fact that the district court did issue with respect to the delays. Here it takes approximately 4.4 years, on average, just to exhaust the process within the district court. Another finding, approximately 3,000 veterans die each year while their appeals are pending. The over 85,000 veterans are on waiting lists for mental health care. I'm willing to guess that at least 3,000 people die each year while the Social Security system is pending. Well, the difference with Social Security is the time frames. We're talking about time frames. If you look at the cases decided by the Veterans Court and you look at the docket sheets for those cases, you can find out how long they've been pending there. Many of the cases have been pending for 12, 13, 14, 15 years. And the time frames we're talking about here are way beyond what is required in a case to comply with due process and to comply with 706.1 of the Administrative Procedures Act. Well, let me ask you one part of your claim, at least, that's different from any other as far as I can tell, is you're talking about emergency health care. That is very true. That is an important distinction. And if you don't get the care within a certain time, you're not getting the care at all. Yes, Your Honor. You're not getting it on an emergency basis. First of all, we're very concerned in the case about the suicide, the rash of suicides, particularly veterans coming back from Iraq and Afghanistan. And if you're turned away, which the record shows at least some veterans have been turned away from facilities, there is no procedure, there is no emergency procedure for the veteran to obtain any relief. So when you're saying The adjudication system doesn't even apply to the whole medical side or medical care side of the VA except for enrollment disputes. There is no remedy and that is the fundamental due process argument we make on the medical care side. If there's a medical decision made to turn away, that is appealable. Well, clinical decisions, no, no, medical decisions are not appealable. The only procedure they have is something called the clinical review procedure, which we believe does not even apply in this case. But even if you assume it did, the clinical review process was intended for questions of the nature of a treatment, should you get chemo, should you get radiation, issues of that sort. It is a seven-step process and three of the stages of that clinical review process have no time limits on them and the others total about 50 or 60 days and the process ends in the seventh stage with a decision by the VA itself. There's not a neutral decision maker. There's no expedience, no procedure to expedite the clinical reviews procedure. So you can't You can't take it to the Federal Circuit? Take it to the Federal Circuit, no, no. There's no provision for jurisdiction in the court over decisions made by the VA on the health side. There is no system of justice for the health care side. The health care side and the adjudication side are completely separate arms of the VA. And so the questions on the adjudication side have to do with the nature of the procedures that they follow. And here we object to the fact that you don't have a neutral decision maker in the initial instance at the regional office. You don't have the right to subpoena documents. The veteran who may have been usually is treated at the VA's own medical facilities and, for example, for PTSD, his treating physician is usually a doctor at the VA, can't call that person as a witness at a hearing to try to establish service connection. There's no discovery procedures. In fact, the procedures that are applicable to the VA system are so limited that they differentiate the VA from every other system of justice in America, whether you look at workers' compensation or whether you look at Social Security, the system. But that's set up by statute, right? The Social Security? No, the review system in the VA. The limitations are set up by statute. Yes. So that's different than your delay claim, let's say. These are statutes of procedure, and the claim is that the procedures set up by Congress violate due process? The claim is that the procedures violate due process both in terms of delay and also in terms of the limitations that are placed upon it. What are fundamental due process issues, such as the opportunity for a hearing at a reasonable time at a reasonable place, the opportunity to present evidence to the decision maker, the right to an independent decision maker, and so on? But with respect to the adjudication side, the principal issue is delay. Why are these claims that need to be taken up one at a time and brought to the Federal Circuit? So if you have a client who, you know, is subject to a particular procedure and suffers a deprivation because of that, it's inadequate, you know, whatever, why isn't that the kind of thing that you need to take up in the context of one case? You know, which then, of course, could have a status effect on the rest of the system. And why isn't the Federal Circuit the correct forum? I mean, Congress clearly meant for the Federal Circuit to be the forum where the review, whatever review there is of the Veterans Affairs decisions, that would be, that would be. I think we're getting to the jurisdiction point. The Congress intended that individual claim decisions that are necessary to a decision by the administrator be handled at the Veterans Court, and then eventually the legal issues only go up to the Federal Circuit. However, with respect to delay. My question is why isn't this raised as an individual claim, and then properly taken to the Federal Circuit? Let me answer that question specifically. First of all, the remedy at the Veterans Court is by writ, and it only affects one individual. The claim in this case is that there are systemic delays. No, but a lot of things only affect one individual. You know, Roe v. Wade only affected one individual, but it had some big effect on the rest of the country. So if you get a decision from the Federal Circuit in a published opinion involving one individual, that has an effect on a lot of other people. That's how stardecisis works. Well, it's not how it works at the Veterans Court, because each case is an individual case that comes up through the system. In fact, even here in this case, the judge made findings that the kinds of claims that we brought here cannot be handled through the Veterans Court system. And one of the reasons is that even if you succeed in getting a writ, advancing your case to the front of the line, all the other veterans have to take a step back in line. And it's not a remedy for systemic delay, because the delays will still be the same. You're just shuffling the order in which the claims will be heard. No, but the systemic delay If the claim is one about systemic delay or adequate process and so on, eventually gets to the Federal Circuit. They decide it, and then presumably the agency And the system is exactly the same the day after such a decision as it was before. There are still systemic delays of 5 or 10 or 15 years. But let me answer the second part of my answer to your question. In Exhibit P1097, in the record below, you have a list of dispositions of the Veterans Court with respect to extraordinary relief. Do you know how many petitions for extraordinary writs of mandate have ever been decided by the Veterans Court? If you look at the page on the report, it shows that between the years 1998 and 2004, there were none. In 2005, one. In 2006, zero. In 2007, two. Now, that includes all writs for every type of relief for mandate. Nothing has ever happened in that Veterans Court because the Veterans Court interprets its jurisdiction very narrowly, and it cannot deal with issues of systemic delay. It is only in an Article III court where you can deal with questions of systemic delay. Well, Congress can, too. Why isn't this a political question, that if you think they are not given adequate resources or they need more personnel or they need more money or they need a different appeal structure and so on, why isn't this a political question to be presented to Congress? Well, for several reasons. First of all, Congress has enacted legislation relating to the timeliness of remands, the timeliness of appeals. Those form part of our statutory claims under the APA. And yet nothing changes. In fact, to answer your question, 20 years the court has been around. All these delays have steadily deteriorated for all those years, notwithstanding repeated efforts by Congress to try to fix them. Well, it's a fact that almost any violation resolving federal agency, the federal government, almost any one of those could be solved by asking Congress to change the law. But what we're dealing with here is with whether what is transpiring now is in compliance with the law. And I wanted to ask you, you have two remedies you've suggested. One is under the APA and one is under the Constitution. Does it matter as far as the relief you seek which violation we find, or is it necessary to find both, or does either do, and what's the difference? Well, the substantive standard under the Constitution, particularly with respect to the due process claims, is different than the substantive standard you apply under the APA for question of delay, for example. The track factors are different. And the relief that's sought is sought under both. There is some overlap in the issues that you have to take up, for example, the reasonableness of the delay. But I think we brought both claims because with respect to the APA claims, there are specific statutes that are being violated, but the relief is perhaps a little narrower than you would get under the Constitution. Let me give you an example. We have complained about the 563-day delay in a remand decision, on average, 563 days. There is a federal statute that says remands have to be handled expeditiously. Here, the head of the adjudication side of the VA, Admiral Cooper, admitted that they were in violation of that statute. So the relief there would be focused on the remand issue. The due process issues, with respect to the same types of delay, relate to a number of different stages in the administrative process, including some that purely involve ministerial acts, but other stages that are not the expressed subject of enactments by Congress. For example, certification of appeal. It's a ministerial act. 563 days. You know, if you look at these delays... I understand if you had one case and said, you know, I've had 563 days. We have a delay claim. We want you to order the agency to decide the case. That kind of claim I can understand, but that's not what you're asking for. You're asking for a relief that would get the agency to sort of generally, across the board, decrease the amount of time it takes in deciding cases. Essentially, you want to sort of take over the VA and sort of run it. And I'm just skeptical as to where we get authority to do that. And how exactly do we go about telling an agency, you know, you've got to sort of work faster. You've got to sort of decide not just one case, but, you know, all of your cases. Where do we get authority? How do we implement something like that? Well, the examples, I think, is in the Court's own jurisprudence here with respect to the Armstrong case and other cases which have dealt with questions of systematic patterns of activity. We propose to the Court that it employs someone, well, first of all, ask the VA itself for a remedial plan. And secondly, perhaps to get someone else involved in the process of trying to accelerate the disposition of these claims and appeals, but there are some very obvious things that can be done. I mean, it shouldn't take almost a couple years to certify an appeal. It's a purely a ministerial act. It shouldn't take two years to schedule a hearing, which, by the way, to answer Judge Reinhart's question with respect to the statutory issue, is also a violation of a federal statute, which requires appeals to be handled in an expeditious manner, including the hearings. Again, there are admissions on the record in this case that they're not handling those in an expeditious manner. But to answer your question, Judge Kaczynski, everyone, I think, would admit that at some point in time, justice delayed is justice denied. What if the delays ‑‑ Not everyone, no. When I was representing defendants, we thought justice delayed was justice. But, you know, it really depends a great deal on your point of view. Not everyone. But you're asking a question about source of authority, and there are really two. One is the Constitution, and second is the APA track factors. When those track factors are satisfied under the APA, relief is mandatory. That's what the cases say. And the whole purpose of the APA is to help. I understand there are certain circumstances in which you can get a delayed claim into the federal court. They're limited, and my guess is that this one would have to go to the federal circuit. But those are sort of details. But that's quite different from saying we're going to tell the agency to be more efficient. Presumably, they get an appropriation from Congress. They've got oversight committees. Congress looks at it. You know, they prepare annual reports. There are, you know, the normal oversight. They are under supervision of at least the present appointment. The judges appointed by the Veterans Affairs are appointed by the president, yes? Yes. Yes, the Article I judges. So, you know, this is sort of a normal supervision that happens within the executive branch of sort of independent agencies. And if, you know, if there's sort of a systematic problem, they're just not getting enough resources, they can't handle all the stuff as quickly as people want, then the political process gives them more resources. There is some problem with regard to resources according to the fact findings of the district court. You are correct. In fact, they had carried over a billion-dollar surpluses from year to year for the last several years. And the testimony was they had sufficient resources. And there are ways that the Veterans Administration itself has determined would resolve these problems, would allow them to comply with the statute, which requires the timely furnishing of medical care, particularly on the emergency basis. That is also true. It's not that it takes a genius to figure this out. And if the VA is not complying with the law and not furnishing timely medical services, I don't know what the great difficulty is in a court saying you must comply with the statute. It's not novel for a court to tell an agency to comply. The APA says it. The VA statute says it. And they're in violation if they're not doing that. In fact, in the White case, Your Honor. In what case do you have supporting what Judge Reinhart says? What case do you have supporting what Judge Reinhart says? Well, let's look at the White case in the Second Circuit affirming a decision by a district court saying that a, I believe, a nine-month delay, which is far shorter than we're talking about, was a violation of due process. But, Judge Kaczynski, I want to answer your question directly. That was an individual claim, wasn't it? The ‑‑ I think, no, I don't think it was. I think the ‑‑ This is White v. Matthews from the District of Connecticut? It was a district court case from Connecticut, yes. And I believe it was a class action, if I'm not mistaken. So it's not from the Second Circuit. Well, it came out of Connecticut, but then it was followed by a Second Circuit decision, also by the same name, of course. In that case, 10-month delay, average delay, was adjudicated to be a violation of due process. But I want to answer your question more specifically. Judge Kaczynski, your premise is that the issues raised in this case could find their way through the VA system to the Federal Circuit. And that is just a mistaken assumption. And it's, in fact, contrary to the conclusion of law by the Court in this case, because in conclusion of Law No. 8, the Court explicitly found, many of plaintiff's challenges are aimed directly at the processes that the regional offices and the BVA use to reach decisions of individual claims. These processes, as conceded by the CADC itself, are outside the purview of its jurisdiction. There's no way for the issues brought in this case to come up in the context of the system. And, indeed, one of the big gaping holes in the government's argument under Robeson in this case is that they don't explain any way under which, if not this Court, some other Court could take up these issues. And, in fact, there is no alternative remedy suggested anywhere in this record by the appellees, by the judge, or anyone else, where the issues that we raised in this case could be resolved. And I don't care whether you're talking about the administrative delay, we're talking about the failure to treat our veterans, or we're talking about implementation of the Mental Health Care Strategic Plan. Kennedy's mainly saying that these problems should be remedied by Congress and the administration. And, of course, he's basically right. You shouldn't have to come to court with these problems. Congress and the administration should be solving this by themselves. That doesn't get us all the way to the answer, because if they don't, then you're left, unfortunately, with a court to do what the other branches should be doing. I agree with that, Your Honor. And I want to add a point. I don't know why the administration doesn't solve this problem. It's a problem that has been around for a long, long time. Well, now is the time to solve it. One question about reasonableness that I wanted to. Well, maybe we could, since you're out of time, maybe we could ask this question of opposing counsel, since you really can't give us a very good answer to Judge Reinhart's, which I assume was not simply a rhetorical question. Well, it was rhetorical as far as this side is concerned. You're right, it's not rhetorical. But it's something we'd like to hear. We'll give you a little time for rebuttal. It's a complicated case, and we'll give you a little time for rebuttal. So why don't we now hear from you. Okay. Can I just add one very short answer to Judge Reinhart's question before we do that? The court here didn't order even any declaratory relief. And so as to what the obligations are of the VA under these federal statutes in health care and disability could have been subject to declaratory relief. Thank you. Charles Scarborough, Department of Justice for the Secretary of Veterans Affairs. The VA is firmly committed to ensuring that our nation's veterans receive top-quality health care and fair and timely decisions on claims for service-connected disability benefits. The VA works closely with Congress to obtain the necessary resources to achieve these goals. In turn, Congress, as Judge Kuczynski has recognized repeatedly,  closely monitors these issues and has imposed significant jurisdictional limitations on the jurisdiction. Have you read the findings of facts? Yes, sir. As you sort of answered Judge Reinhart's question, some of these figures that opposing counsel cited both at oral argument and in his brief are troubling, the delay figures. And I was wondering if you think that your client is succeeding in its effort to do what you said it's doing. Well, certainly the VA is committing an extensive new allocation of resources here. The district court made a number of findings just on the benefits side about hiring, you know, over 3,000 new VBA staff about dealing with pilot programs to shorten the delays here. The pilot programs are both innovations that the VA is experimenting with and innovations that Congress is experimenting with in a recent statute in October of 2008, in which essentially the time frames are compressed by having the veteran essentially agree that the evidence is complete. Part of the delay here and part of the area in which I actually agree with opposing counsel is that this really is a unique system. It's unique among any other federal agencies in the sense that the VA has an obligation to assist the veteran in developing the claim and takes that obligation very seriously. But that does in turn sometimes lead to delays as evidence comes in in a sort of piecemeal fashion and they have to go find more evidence and they have to wait for the veteran to go and get more evidence. And there's a back and forth and that leads to delays. Those delays, as counsel has said, are in many ways too long. However, with regard to the sort of the most serious delays that keep being bandied around here, it really does only affect a very small percentage of the cases here. The district court's finding of facts, let me make sure that it's very specific, was that it only affects a small percentage of cases and that only 4% of the cases appeal, go all the way to a decision by the Board of Veterans' Appeals. And that means that essentially at the RO level, the veterans are getting their benefits, the VA is getting it right the first time, and the VA is reasonably choosing to help. I'm sorry. I saw that figure in the briefs and maybe I misunderstood it, but I wasn't exactly sure why that figure supported your position. Maybe people sort of give up or die or... I'm not making the least prestigious. I'm just saying the fact that, you know, if you draw out a process far enough in time, given the limitation on life and health and people's patience and so on, you probably would have very few cases reach a conclusion just because people don't live that long or don't want to spend that much time in the process of trying to get the dispute resolved. So it wasn't clear to me that this figure that you had, that only, what was it, 4% go to a... A final decision by the Board. How does that support your position? Well, it shows that as to the most significant delays that the district court found, it affects a small percentage of the people here. And it really is pure speculation to sort of say, well, it's because of the delays that they're not filing the appeals. Well, how do we know that... We don't know that. ...the 96%, there isn't some significant part that just sort of give up and say it's been too long, you know, this is not worth pursuing. Well, in a large number of cases, the benefits are granted, you know, in full or in part. Well, see, that kind of figure would be more helpful. You know, the benefits are granted in X number of figures. But saying 4% are the only ones to get to the end of the line, there are many other possible reasons why people drop out before the end and short a victory. They may not have the resources or the patience or, you know, whatever, or, you know, the longevity to see it through. I understand, Your Honor, and I think your point speaks to sort of the breadth of the claims here and how it's difficult to assess the reasonableness of delay sort of in the abstract based on average decision times and things like that. Normally, in an unreasonable delay case under 706-1, you have a discrete set of facts. You have, you know, a deadline and you have the ability to sort of, you know, say, oh, come on, this is way too long for a case of this simplicity. As this Court knows, I mean, cases vary in complexity all over the map here, and what may be reasonable delay in one case may be unreasonable in another case. And that's sort of our threshold point, our threshold jurisdictional point here, is that you can't assess this in a vacuum. Actually, that you, I don't mean so much you personally, but you as the Department of Justice, and I assume that's a lawyer from the Department of Veterans Affairs, and counsel at that table really have a lot in common. And, you know, you want, as I'm sure they want, to have timely delivery of services to the men and women who've, you know, fought and bled for our country, right? Absolutely, Your Honor. And I'm just sort of getting away from the law and just explain to me in plain English why, you know, as Judge Hunt pointed out, there's money. There's not a shortage of money. Congress has always been generous with money. I assume there's not a shortage of goodwill of the people in the department. A large percentage are veterans in the department. Right. The General Shinseki himself is a veteran. Yes, Your Honor. So I'm just wondering, why are we here? Why is this the kind of, what is the disconnect here that you or maybe counsel couldn't go out and work out a plan to get this done? You know, not to worry about who wins and who loses, but do what everybody seems to want to do, and that is to provide better service for our veterans. The VA is absolutely trying to do that and has made a steady increase in its commitment of resources towards these problems. These problems have become more salient in recent years with ongoing wars in Iraq and Afghanistan as you have more people returning with PTSD and other, you know, suicide issues. They are very important concerns. It takes a while for the allocation of funds and the hiring of personnel at both VBA and VHA to sort of catch up in terms of the provision of services. The district court made a number of findings on the health care side, for instance, that the VHA has essentially implemented, at the time of the trial, 80 percent of the initiatives in the mental health strategic health plan. It's created a national suicide prevention hotline. Every medical center now has a suicide prevention coordinator, and there's been a tremendous allocation of resources to getting medical care. But as I understand as to that issue, those are not available at the local centers where most veterans get their services, right? You have to go to a hospital to get them. Well, there's an effort to increase the availability at the CBOCs, as they're called, the local medical centers as well. Again, the mental health strategic plan is just that. It's a whole set of initiatives that the VA is trying to do better on. There is a very different or a big difference between having these initiatives and having the VA work with Congress to obtain the funding to sort of follow through on those initiatives fully and completely and having a court order it under the power of contempt. You must do these things. That's precisely what the Supreme Court said in the Southern Utah case. You can't do an unreasonable delay case because it entangles the court in the day-to-day management of the agency in a way that is simply impermissible under the system of separation of powers. So that's an effort to answer Your Honor's question about, yes, I think there is sort of a disconnect. We are all aiming in the same direction. But there's a significant and serious difference between a court ordering, you know, you to compel or compelling an agency to sort of implement everything. Well, you shouldn't have to do it, but that's the last resort. But it's not an as the district court's own findings. It would be like a court taking over a prison system, for example. Right. When the state tells you, why do you do it for 17 years? We'll do it without a court. Why is the court telling us to? Again. After 17 years, they haven't done it. It's the same thing with the Veterans Administration. No, it's not. With respect, Your Honor, I told you. The government always tells the court, you know, let us do what we've been doing. That's the answer. That's not what we're telling the court. All right. Well, Judge Kaczynski's question was whether you and the other side could get together and agree on things that would make it unnecessary for the court to issue an order. Well, Your Honor, I think the fundamental problem there is that any sort of settlement like that is backed by judicial supervision of the decrees and the implementation of the pace of health care reform, institutional reform. And that's something that Southern Utah says you just can't have anymore. Maybe at one point, you know, you could have the courts intervening here, but that's not the system that we have under the unreasonable delay, especially in an area where the statute so clearly commits the provision of health care to the Secretary's discretion. I mean, you have to provide health care. You want to do it in a timely manner. You want to provide the right form of health care. But there are no meaningful standards for a court to evaluate sort of are you providing good enough care, are you providing it fast enough to veterans. It's just not something a court can supervise. Is it your contention that there is no unreasonable delay? You mentioned that 1.4 percent, that that only involves small money. But is it your contention that generally there is no unreasonable delay? Yes, Your Honor, and that's precisely what the district court found. Now, I should point out that the district court found, as I read the factual findings,  Well, with respect, Your Honor, the district court applied the track factors, and that's the sort of the legal, you know, set of factors that they have to go through, and said I find that there's no unreasonable delay in part because sort of focusing in on the appellate delays, which are the most serious delays here, would, in the district court's word, you know, make a diversion of resources away from the RO level where the VA is doing much better and is processing claims at the district court found on an average of 180 days. Again, some of these figures don't sound very good, but it's a function of the fact that the evidence comes in in a piecemeal way. There's a lot of back and forth between the VA and the veteran. The VA has a lot of duties to help the veteran out. Some of those duties, you know, they may not do it exactly right the first time. There may be a remand back because the VA, you know, failed to provide proper notice that you need this particular piece of evidence to show that some disability is service-related. So in your view, the fact that these other two veterans groups are really worked up and concerned about unreasonable delay has no basis? No, Your Honor. I'm not ñ I'm in no way meaning to disparage the concerns here, and I want to be very clear on that. What I am meaning to say is that with the benefit system, Congress prescribed a scheme here. Unreasonable delay claims can be addressed in that scheme. They may not be able to be addressed in the systemic way that plaintiffs wish, but the Court of Appeals for Veterans Claims under 38 ñ Well, you said earlier I thought there is no unreasonable delay. I did say that, but my point is simply ñ and then you asked a follow-on question, and I was trying to be responsive to that. Do we care about that? And how can it be addressed? And my point here is the system that Congress prescribed allows you to address it. It's a violation of the merits.   And so I'm not saying that the Court of Appeals for Veterans Claims under 38, U.S.C. 7261A2Ö So they're right on the merits, you're saying. No, I'm not saying that. It is a violation, but they're in the wrong forum. No, Your Honor. That's precisely the opposite of what I said. Oh. They're right on the merits. No, Your Honor. Well, I don't understand. When I say they're wrong on the merits, you say no or yes. And then when I ask are you right, are they right on the merits, same thing. Which is it? They're wrong on the merits or they're right on the merits? They're wrong on the merits, as the district court found. There is no unreasonable delay here under Track. Now, the district court didn't even have to get to that because there are specific jurisdictional barriers to a district court hearing that sort of claim. I'm not asking about jurisdiction. I'm just trying to find out whether they're right about their complaints that there are unreasonable delays. And your answer is no? That's correct. If you're doing your proper job, there are no unreasonable delays in this. This is the finding by Judge Consigliano. No, I didn't ask about the finding by Judge Consigliano. I'm asking for your opinion. That's my opinion. There are no unreasonable delays. We are adopting in full the opinion, or not in full, the opinion of Judge Consigliano. You don't have any opinion of your own. Your Honor, the VA officials all testified at trial that, yes, we would like to move the system along faster.  This is a very important point that's been pointed out on a number of occasions. That's what I said to you originally. It's just that they're in the wrong forum. Well, yes. In an individual case, and perhaps the disconnect here that we're having, Judge Reinhardt, is that in an individual case, you could absolutely complain if you were sitting around for 500, 600, whatever it is. You could go to the Court of Appeals for Veterans Claims and say my case is being unreasonably delayed. Hear me. I know that they could do that, or maybe they could do it as individuals. I'm only trying to find out two things. One, are their basic allegations correct that there's an unreasonable delay, or is it that they are correct and should be in a different forum? And I think you said both. I don't know. Let me try to clarify here. No, their basic allegations that there are unreasonable delay are not correct, as the district court found. And yes, they should be in a different forum. Well, they shouldn't be in any forum if they're wrong. Well, no. You could still make allegations and the court would reject them in the federal circuit. Well, I know you could go, you know, that's an old story. If you've got $18, you can file a complaint. That doesn't mean it has any merit. You're saying their complaints don't have merit. Absolutely. Right. And if they did have merit, they should be somewhere else. But they don't have merit, so that should be the end of the case. You don't know what they're complaining about. Your Honor, there's factual findings here, and then there's an illegal finding that there is no unreasonable delay. My point is that the district court didn't even really have to get to that. We haven't spent a lot of time talking about the specific jurisdictional limitations under 511 and 502 that preclude review of agency decisions affecting the provision of benefits. This is the scheme that Congress set up to avoid having the federal courts enmeshed, entangled in these sorts of decisions about how fast to process things, what evidence is necessary in a particular case, those sorts of things. That's what the BJRA was enacted in 1988. We don't have to get to that anyway because there's nothing wrong. It's a wonderful system, and everybody's getting what he's entitled to. Well, no, Your Honor. I think it's precisely the opposite order. You deal with the jurisdictional question first, so you would have to, as the district court did, address 511 and 502.  I think you're going sort of to a policy argument. I'm not going to a policy argument. I'm asking you about the facts. You know, are the veterans receiving the kind of treatment they're entitled      If there were, they should be somewhere else, but there isn't any problem. Or is there an unreasonable delay? And your answer, as I understand it finally, is there's no unreasonable delay. That's correct. They're being treated properly. And you're proud of the treatment you're giving. Your Honor, that's really not something that's relevant here about being proud. I mean, this is a legal case, ultimately. I know what it is. Thank you. Well, it's whether a court can compel the agency to adopt a mental health strategic plan. That wasn't what I'm asking you. I know you would like to tell us what we can ask, but Judge Kaczynski said, and you agreed, that everybody here is concerned about the welfare of the veterans. That's very different. When I tried to ask you about it, you said it doesn't matter. You shouldn't be asking because it's a legal case. I don't believe that's a fair characterization. I do. Okay, well, contrary to your suggestions, we don't hand out medals, so don't get your hopes up. I'm sorry? We can't hand out medals. There's no way looking for a medal in this case, Your Honor. That authority is still with Congress and the President, so it's safe. I think that the point is here, this is really not a case. I think we understand your position. Thank you. Thank you, Your Honor. Would you like to take a minute or two for a bottle? Yes, Your Honor. I'd like to make a few. But I can guarantee no medals. There will be no medals. Okay. I'll leave that out. Although this would resolve the case, I'd come up with a medal. I'd find some way of coming up with a medal. A couple of quick observations with respect to the 4% issue, only going up in appeal. The case of Coe v. Thurman establishes that where there is a right to appeal, the appeal procedure must comply with due process. So it's analytically improper to mix the appeal in with the regional office dispositions in trying to suggest there's not a problem there. Second, on the 4%, we do have evidence in the record what happens to a lot of these appeals. Of course, the veterans are not represented in many cases. They represent themselves. Exhibit P1097, if you look in the dispositions at the court, the veterans court, you'll find that anywhere between 25% and 34% of the claims are either dismissed for default, dismissed for lack of jurisdiction because the veteran didn't satisfy the timeline, or basically dismissed voluntarily, meaning he didn't file his brief on time. So how you get down to 4% is complicated. Second point, you ask, do the veterans give up, Judge Kaczynski, and the evidence of the record is that they do give up. They get very frustrated with the system. Often they give up at some stage in the process, and the claim abandonment rates are very, very high in the regional office level. So the 4% at the end doesn't reflect 96% of happy. It certainly does not. In fact, it's testimony in the record on that. You don't have to embellish. The other issue I'd like to talk about is your answer to the question we asked over and over to your opposition. Are there other areas generally that there are unreasonable delays? Well, there are unreasonable delays that permeate the entire system, but I'll break it down. The delays at the BVA are unconscionable. The remand delays are unconscionable. When you're talking about a process that takes 12 or 15 years, and so many people die before they get an ultimate resolution of their claim, there are unreasonable delays in the provision of health care. There are 160,000 people on a waiting list just for mental health care in this country. There's a mandatory duty to provide that health care. In fact, all the provisions of that mental health care strategic plan, all the key provisions are not only in the mental health care plan, they're not only in the feeling memo, but they're also have been codified in the Joshua Omvig Suicide Prevention Act after the trial. Now, one issue of reasonableness I wanted to point out to the Court, and it's not in the briefs, is this. One measure of reasonableness of time is a task at hand. Here we have a process of adjudicating a claim. We have in the record both the average time it takes to adjudicate a claim, in hours, and we have a work standard for adjudicating a claim. In both cases, we're talking about somewhere between three and a half and perhaps nine hours total time. What that means is for those veteran claims that are sitting for five or six years to be adjudicated, that they're sitting on a shelf for almost that entire period of time. It is as if you have an assembly line, and the line stretches out so far that it only takes perhaps a day to do a specific task. Are people waiting for mental health services? People are waiting for mental health. What are you talking about? There's a specific finding that over 85,000 veterans have been waiting more than 30 days to schedule an appointment for mental health, even though the mental health care strategic plan and the feeding memo require appointments within 14 days. They can go into emergency, though, right? Well, those include some emergency cases. In fact, some of our cases of the veterans where we got declarations from the widows were cases that went to the emergency room at the VA and were told, you're 36 on a waiting list, come back in two months. And they went back and they killed themselves. Let me ask you this. You've all acted as if there's plenty of money to do this. With that long a waiting list, you think they have all the personnel and facilities required so that with proper administration, they could eliminate the waiting list? Well, that is an interesting question, but the evidence in the record on having enough money comes from the VA people who are running these programs. They say they have more than enough money, and there have been large increases in the VA budget in recent years, particularly the last three years, very large increases. So the question of retiring the backlog, I mean, the backlogs on the adjudication side have grown so large. It's not just a question of money, of course. They have to have the personnel, and for that they need personnel authority from OPM. I don't want to get into the... Well, that was my question. What is the shortage there? If there's money around, is there not enough people? Are they not authorized enough people? It's a combination of problems, I think. It's a management problem, number one. It's where the resources are dedicated. I mean, as an example, the medical centers of the VA have a large amount of autonomy, and so even where Congress earmarks money specifically for mental health care in a medical center, the director of that center can divert that money for other uses, and my understanding is that happens frequently. So they don't spend the money necessarily where Congress says it should be spent. The VA's budget is huge, absolutely enormous, and they say they have plenty of money to do all these things. They even have enough money for a worst-case scenario of veterans coming back from Iraq and Afghanistan, many of them from multiple tours of duty, 40 percent of which will suffer from severe depression. Do you agree with the opposition that the finding of the district court was that there was no unreasonable delay? I completely disagree with that. The findings of the court did not find that there was not unreasonable delay. The court went through the delays at every stage of the process and I think basically adopted all our proposed findings with respect to the timing of those delays. I was reading through that. The judge was pointing out all the unreasonable delays, and the reason for the decision was that he didn't believe the court could reach it. That's exactly right. In fact, the judge specifically said in his opinion he found the delays to be troubling. I think the same language used today by one of you in a question. The question, though, as to why these delays have become so protracted is a complex one. But at this stage of the case, even under Lujan, which is a case they heavily rely upon, the Lujan court said that APA relief could extend to requiring a regulation, a series of regulations, or, quote, even a whole program to be revised by the agency in order to avoid the unlawful result that the court discerns. And I believe this is a case where both on both the medical and on the adjudication side, the time has come for a court to act. These are not problems of recent origin. Okay. Thank you. Thank you. A case well argued. We thank counsel for their help. I'm going to defer submission of the case for a week. And what I'm going to do is encourage counsel, now that they're here together, it's lunchtime, go and get a sandwich together. And I'd like you to consider the possibility of working something out in the case. And I realize that on this side of the table, this is something we'd have to get permissions and approvals up the chain. So just have lunch. But we have a. . . It's not an order. It's a. . . No. It's not an order. Well. . . You can have. . . If you think we wouldn't. . . At least chat. And we have a mediation office that does exceptionally good work that we could put at your disposal. They have been very successful in mediating a number of very difficult cases, including criminal cases, cases involving the death penalty, things that people would think are totally incapable of mediation. It occurs to me we also have a number of our judges who are themselves veterans, and if there was a mediation process involved, it might be useful in resolving mediation. Part of my problem here is, putting aside the legal and jurisdictional question, is this is one of those things that is very difficult for a court to manage and is much better managed if the parties work out something together. And I will defer submission for a week, and if the parties are interested in pursuing some course of action like that, either through a mediation office or involving one of our senior judges who is a veteran who might help the mediation process, we will be happy to, with the consent of my colleagues, continue the deferring submission to give you all a chance to try to work something out. What I'm struck by in this case is that everybody here on both sides of the table is concerned with helping our veterans, with making sure that men and women who fought and bled for our country are well taken care of. I see good faith on both sides, and maybe this is an occasion where that good faith can be brought together in a constructive way, so rather than having a winner and a loser, we can have winners on both sides. So we'll defer submission for a week. If we don't hear from the parties in a week, we'll simply submit the case and decide it. But I am very hopeful that, and if you need more time after a week because of permissions or whatever, you just simply ask us for more time, and you can be sure that we will be generous in granting additional time. If there's no possibility of settlement, of course we'll do what we are paid to do, which is to decide the case. But I do believe that if there's some way of bridging the gap and having the lawyers become rather than gladiators, become healers and mediators and folks who bring parties together rather than keep them apart, that would be a tribute to our profession and also a service, a great service to the people who really do care about it. Thank you, Your Honor. I actually have one other housekeeping matter I meant to mention and I neglected. There's a very important case that came out this morning from the Federal Circuit, the Cushman v. Shinseki case. It deals with due process and the property interest and due process violations. We will be submitting a 28-J letter with respect to this case. Go ahead. Go ahead and do that. But I do recommend breaking bread, even if it's only a bottle of water that you share together. Well, on the other hand, you have heard some of the questions from the panel. And if you were attuned, the tape is available. You can listen to them again. And, you know, we haven't had a conference, so I don't know for sure what any of my colleagues think here. But you've heard the questions and you've heard what we've all had to say, so you know a lot more than you did when you did the judicial assessment. I would think that you would, you know, as excellent lawyers as you all are, you would be able to read between the lines and figure out what's going on with this case. And on that basis, with new information at hand, maybe make a renewed assessment. So it's only a week and a bottle of water that you need to share with each other, so why don't we give it a try? Thank you, Your Honor. Okay? Anyway, we'll defer submission for a week and hope and pray that a solution is found.
judges: Kozinski, Hug, Reinhardt